1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 11 LETICIA CEJA-CORONA, | Case No.  1:12-cv-01703-AWI-SAB |
| 12       Plaintiff, | FINDINGS AND RECOMMENDATIONS |
| 13     v. | RECOMMENDING THAT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED |
| 14 CVS PHARMACY, INC., | ECF NO. 27 |
| 15       Defendant. | OBJECTIONS DUE WITHIN FOURTEEN (14) DAYS |
| 16 | |

17

18   On February 28, 2014, Defendant CVS Pharmacy, Inc. ("Defendant" or "CVS") filed a

19 motion for summary judgment.  (ECF No. 27.)  Plaintiff Leticia Ceja-Corona ("Plaintiff") filed

20 oppositions to the motion on March 28, 2014 and April 1, 2014.  (ECF Nos. 33, 35.)  Defendant

21 filed a reply on April 15, 2014.  The motion was referred to the undersigned magistrate judge for

22 findings and recommendations pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.

23   The hearing on Defendant's motion took place on April 23, 2014.  Counsel Hugo Gamez

24 appeared on behalf of Plaintiff via telephone.  Counsel Caryn Anderson appeared on behalf of

25 Defendant by telephone.  Counsel Ricardo Aranda was also present on behalf of the trustee in

26 Plaintiff's bankruptcy proceeding by telephone.

27   For the reasons set forth below, the Court recommends that Defendant's motion for

28 summary judgment should be granted.

1

# I.

# BACKGROUND

This action was removed from the Superior Court of California for the County of Stanislaus on October 16, 2012.  (ECF No. 1.)  Plaintiff's complaint originally raised eight causes of action arising from her employment with Defendant.  Plaintiff generally alleged that she suffered a work related injury and Defendant failed to accommodate her.  Plaintiff was eventually terminated from her job.

Plaintiff filed for Chapter 7 bankruptcy on April 9, 2010.  (CVS's Reply Statement of Undisputed Facts ("SUF") No. 1.)  Plaintiff did not disclose any claims against CVS in her Schedule of Assets filed with her bankruptcy petition.  (SUF No. 2.)  Plaintiff did not disclose any alleged claim against CVS in her Schedule of Assets field with her Voluntary Petition  (SUF No. 2.)  Plaintiff never amended or supplemented her Schedule of Assets in her bankruptcy proceedings.[1]  (SUF No. 17.)  On July 23, 2010, Plaintiff's bankruptcy closed.  (SUF No. 3.)

No one at CVS told Plaintiff that she was terminated because of her disability.  (SUF No. 4.)  CVS's job description for the "Stocker" position requires that the employee have the ability to push/pull heavily loaded carts, perform constant medium-heavy lifting of over 20 pounds and occasional heavy lifting of over 75 pounds.  (SUF No. 5.)  CVS's job description for the "Selector/Picker" position requires that the employee have the ability to perform frequent medium heavy lifting of 1 to 20 pounds with occasional very heavy lifting of up to 75 pounds.  (SUF No. 6.)  Currently, Plaintiff is restricted to lifting no more than 10 pounds.  (SUF No. 7.)

CVS accommodated Plaintiff with a leave of absence beginning on October 23, 2010.  (SUF No. 8.)  CVS's policies prohibit discrimination of any kind and provide mechanisms for reporting any suspected discrimination, including a 24 hour a day ethics hotline which can be called anonymously.  (SUF No. 9.)

/ / /

/ //

---

[1] Plaintiff contends that this fact is disputed, but cites no evidence and makes no argument which contradicts this fact.

1    Plaintiff signed her administrative EEOC complaint with the Department of Fair Housing

2    and Employment on August 6, 2011.[2]  (SUF No. 19.)

3    Plaintiff settled her Workers' Compensation claims against CVS on November 2, 2011.

4    (SUF No. 10.)

5    Plaintiff has not applied for work since October 2010.[3]  (SUF No. 12.)  Plaintiff, to this

6    day, avoids lifting anything with her left hand.[4]  (SUF No. 25.)

7                                                    **II.**

8                            **SUMMARY JUDGMENT LEGAL STANDARD**

9    Under Federal Rule of Civil Procedure 56, "[a] party may move for summary judgment ...

10   if the movant shows that there is no genuine dispute as to any material fact and the movant is

11   entitled to judgment as a matter of law."  Summary judgment must be entered "against a party

12   who fails to make a showing sufficient to establish the existence of an element essential to that

13   party's case..."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "[A] party seeking summary

14   judgment always bears the initial responsibility of informing the district court of the basis for its

15   motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories,

16   and admissions on file, together with the affidavits, if any,' which it believes demonstrate the

17   absence of a genuine issue of material fact."  Id.

18                                                   **III.**

19                                            **DISCUSSION**

20   Defendant raises ten arguments in its motion for summary judgment.  For the reasons set

21   forth below, the Court finds that Defendant is entitled to summary judgment with respect to

22

23   [2] Plaintiff contends that this fact is disputed, but cites no evidence and makes no argument which contradicts this
     fact.  Plaintiff does not note that the EEOC complaint was not received until September 14, 2011.

24
     [3] Plaintiff disputes Defendant's contention that Plaintiff has not applied for work "because of her medical
25   restrictions."  Instead, Plaintiff contends that Plaintiff has not applied for work because "[s]he simply questions who
     will hire her if she has to present these restrictions to a new employer."

26   [4] Plaintiff contends that this fact is disputed, but cites no evidence and makes no argument which contradicts this
     fact.  Plaintiff merely argues that the fact is immaterial, which is not the case, as discussed in more detail below,
27   because the reasons Plaintiff has not applied to work speak to whether she was capable of working.  Moreover, in
     analyzing whether a fact is disputed, the Court looks to whether there is any evidence that contradicts the fact, not
28   whether the fact is immaterial or relevant.

1   Plaintiff's disability discrimination claim and Plaintiff's related claims because there is no

2   genuine issue of material fact with respect to whether Plaintiff is capable of performing her job

3   duties, with or without accommodation.  Accordingly, the Court need not address the remaining

4   arguments raised in Defendant's motion pertaining to the statute of limitations or the exclusive

5   remedy established by worker's competition law.

6       **A.   Plaintiff's Discrimination Claim**

7       Defendant argues that summary judgment is appropriate on Plaintiff's disability

8   discrimination claim because Plaintiff cannot establish a prima facie case of discrimination.

9   "When entertaining motions for summary judgment in employment discrimination cases arising

10  under state law, federal courts sitting in diversity must apply the McDonnell Douglas burden-

11  shifting scheme as a federal procedural rule."  Zeinali v. Raytheon Co., 636 F.3d 544, 552 (9th

12  Cir. 2011) (internal quotations and citations omitted).  In order to defeat a defendant's motion for

13  summary judgment, the plaintiff/employee must first establish a prima facie case of

14  discrimination.  Id.  If the plaintiff/employee does, the employer must articulate a legitimate,

15  nondiscriminatory reason for the challenged action.  Id.  If the employer satisfies this burden, the

16  plaintiff/employee must show that the reason is pretextual, either directly by persuading the court

17  that a discriminatory reason more likely motivated the employer or indirectly by showing that the

18  employer's proffered explanation is unworthy of credence.  Id.

19      "Under California law, a prima facie case of discrimination requires the plaintiff to

20  'provide evidence that (1) he was a member of a protected class, (2) he was qualified for the

21  position he sought or was performing competently in the position he held, (3) he suffered an

22  adverse employment action, such as termination, demotion, or denial of an available job, and (4)

23  some other circumstance suggests discriminatory motive.'"  Id. (quoting Guz v. Bechtel Nat.

24  Inc., 24 Cal. 4th 317, 355 (2000)).  "In light of the similarities between FEHA and Title VII,

25  courts routinely rely on both California and federal case law."  Id.

26      Defendant contends that Plaintiff cannot establish a prima facie case of discrimination

27  because Plaintiff cannot demonstrate that she was qualified for the position she sought or was

28  performing competently in the position she held.   While FEHA prohibits employment

4

discrimination based upon an employee's disability, FEHA:

> does not prohibit an employer from refusing to hire or discharging an employee with a physical or mental disability ... where the employee, because of his or her physical or mental disability, is unable to perform his or her essential duties even with reasonable accommodations, or cannot perform those duties in a manner that would not endanger his or her health or safety or the health or safety of others even with reasonable accommodations.

Cuiellette v. City of Los Angeles, 194 Cal. App. 4th 757, 766 (2011) (citing Cal. Gov't Code § 12940(a)(1)) (internal quotations omitted).  "Therefore, in order to establish that a defendant employer has discriminated on the basis of a disability in violation of the FEHA, the plaintiff employee bears the burden of proving he or she was able to do the job, with or without reasonable accommodation."  Id. (citing Green v. State of California, 42 Cal. 4th 254, 262 (2007)).

       1.    Evidence Relating to Plaintiff's Discrimination Claim

Defendant predominantly relies upon Plaintiff's deposition testimony in support of their contention that Plaintiff cannot perform her essential job duties.  Plaintiff testified:

> Q.    Okay.  So when you took over -- when you worked as a stocker for Longs -- or excuse me, for CVS, would it also be true that on a regular daily basis, numerous times a day, that you would be required to pick up and move a box that weighed more than 25 pounds?
> A.    Yes.

(Decl. of Jody A. Landy in Supp. of Def. CVS Pharmacy Inc.'s Mot. for Summ. J. or, in the Alternative, Part. Summ. J. ("Landy Decl.") Ex. A 35:19-36:4, ECF No. 27.5.)

> Q.    Okay.  And as a stocker at CVS, when you were -- you would be continuously throughout the day required to pick up boxes or items that weighed more than 25 pounds?
> A.    Yes.

(Landy Decl., Ex. A 48:15-19, ECF No. 27.5.)

> Q.    Okay.  You said it was also typical that in each day  you would have to pick up a box that weighed more than 50 pounds.  Is that correct?
> A.    Yes.

(Landy Decl., Ex. A 49:7-10, ECF No. 27.5.)

1    Defendant also contends that a job description for Plaintiff's "stocker" position described

2  the physical demands of the position to require constant lifting of over 20 pounds and occasional

3  lifting of up to 75 pounds, which Plaintiff confirmed as consistent with her experience. (Landy

4  Decl., Ex. A 51:22-53:22, ECF No. 27.5.)  Plaintiff testified that some aisles did not have items

5  that weighed more than 25 pounds, but Plaintiff was never assigned to those aisles. (Landy

6  Decl., Ex. A 54:5-17, ECF No. 27.5.)  The job description for the "picker" or "selector" position

7  required frequent lifting of 1-20 pounds and occasional lifting of up to 75 pounds, which Plaintiff

8  confirmed as consistent with her experience. (Landy Decl., Ex. A 58:21-59:21, ECF No. 27.5.)

9    Plaintiff testified that she could not carry out her job duties as a stocker without forceful

10  gripping activities or without lifting anything over 25 pounds. (Landy Decl., Ex. A 88:11-21,

11  ECF No. 27.5.)  Plaintiff testified that, at the time she was terminated, she was not capable of

12  performing her job duties as a stocker or as a selector. (Landy Decl., Ex. A 176:1-15, ECF No.

13  27.5.)

14    After Plaintiff injured her wrist, her doctor sent her back to work with restrictions.

15  (Landy Decl., Ex. A 68:9-10, ECF No. 27.5.)  Restrictions continue to exist as of the date of

16  Plaintiff's deposition. (Landy Decl., Ex. A 68:17-19, ECF No. 27.5.)  In 2007, those restrictions

17  included "[n]o grasping, no pulling, no lifting more than five pounds, no pushing, and no lifting

18  over [Plaintiff's] head." (Landy Decl., Ex. A 68:22-24, ECF No. 27.5.)  Plaintiff admits that she

19  could not perform the job duties of a "selector" with the restrictions. (Landy Decl., Ex. A 69:4-

20  6, ECF No. 27.5.)  Plaintiff attempted to continue to work for a while, but complained to her

21  supervisors, who told her to just try her best. (Landy Decl., Ex. A 69:7-70:3, ECF No. 27.5.)  In

22  early 2008, Plaintiff's job restrictions were initially 15 pounds, but later went up to 25 pounds.

23  (Landy Decl., Ex. A 71:19-22, ECF No. 27.5.)

24    In 2008, Plaintiff moved from working in the "damage area" and returned to her job as a

25  selector. (Landy Decl., Ex. A 75:19-22, ECF No. 27.5.)  In mid-2009, Plaintiff applied for and

26  put in a stocker position. (Landy Decl., Ex. A 76:1-15, ECF No. 27.5.)  Plaintiff worked as a

27  stocker and as a selector throughout 2009. (Landy Decl., Ex. A 77:4-8, ECF No. 27.5.)

28  / / /

1       At some point, Plaintiff spoke to a supervisor, who assigned Plaintiff to "light duty,"

2  which involved putting on labels for ads and involved carrying a box less than 20 pounds.

3  (Landy Decl., Ex. A 80:10-81:9, ECF No. 27.5.)  However, placing labels for ads was a task only

4  done on Thursdays and Fridays--there was no full-time position dedicated to placing labels for

5  ads.  (Landy Decl., Ex. A 182:10-13, ECF No. 27.5.)  After a few months, Plaintiff was placed

6  back in the damage area.  (Landy Decl., Ex. A 81:10-15, ECF No. 27.5.)

7       In September 2010, Plaintiff was again advised by her doctor not to lift anything over 25

8  pounds.  (Landy Decl., Ex. A 94:5-95:2, ECF No. 27.5.)  Plaintiff testified that she felt she could

9  not lift items over ten or fifteen pounds at this point in time without pain and that she did not lift

10  anything with her left hand if she could avoid it.  (Landy Decl., Ex. A 95:3-21, ECF No. 27.5.)

11       Plaintiff contends that Defendant hired someone for a position in the office after Plaintiff

12  stopped going to work.  (Landy Decl., Ex. A 117:4-118:14, ECF No. 27.5.)  Plaintiff contends

13  that she was unaware of the position because it was posted on the bulletin board after Plaintiff

14  could not return to work and nobody called Plaintiff to inform her about the position.  (Landy

15  Decl., Ex. A 117:14-25, ECF No. 27.5.)  At the time she was terminated, Plaintiff was not aware

16  of any open positions that Plaintiff was qualified to fill with her restrictions.  (Landy Decl., Ex.

17  A 176:17-21, ECF No. 27.5.)

18       In May 2011, Plaintiff's doctor gave Plaintiff more restrictions, and Plaintiff could not

19  lift anything over ten pounds.  (Landy Decl., Ex. A 127:5-17, ECF No. 27.5.)  In June 2011,

20  Plaintiff applied for state disability benefits.  (Landy Decl., Ex. A 127:24-128:1, ECF No. 27.5.)

21  In connection with Plaintiff's application, a Dr. Rollins opined that Plaintiff had not been capable

22  of working her regular work since November 2007.  (Landy Decl., Ex. A 128:14-20, ECF No.

23  27.5.)  Plaintiff submitted her application and began receiving disability benefits for about a

24  year.  (Landy Decl., Ex. A 131:2-13, ECF No. 27.5.)  Plaintiff also applied for Social Security

25  benefits, but her application has not been approved.  (Landy Decl., Ex. A 172:3-15, ECF No.

26  27.5.)

27  / / /

28  / / /

During Plaintiff's deposition, Plaintiff was asked whether she was capable of working:

> Ms. Landry:   You felt that you've been capable of working anywhere since October of 2010 to the present?
> Mr. Gamez:  Objection, speculation.
> The Witness:  No.
> Ms. Landry:
> Q.     Have you applied to work anywhere since October of 2010 to the present?
> A.     No.
> Q.     Why not?
> A.     Because since I have that restriction saying that I can't lift, I can't push, I can't grab, I can't use my hand constantly, I have to put it on the application.  Who is going to hire me with that?

(Landy Decl., Ex. A 187:11-25, ECF No. 27.5.)   Plaintiff was also served with a request for admission asking Plaintiff to "[a]dmit that you have not considered yourself able to work in any capacity since May 1, 2013."  (Landy Decl., Ex. G, pg. 3, ECF No. 27.6.)  Plaintiff so admitted.  (Id.)

     2.     <u>No Material Dispute That Plaintiff Was Not Qualified For The Position She Held</u>

Defendant contends that Plaintiff cannot make a prima facie case for disability discrimination because she cannot satisfy the second element of a prima facie claim: that Plaintiff was qualified for the position she sought or was performing competently in the position she held.

Plaintiff contends that she could perform her essential job duties as a stocker or as a selector.   However, the evidence suggests otherwise and Plaintiff has not cited any contrary evidence to create a genuine issue of fact.   As a starting point, the Court notes that Plaintiff admitted during her deposition that she was unable to work as a stocker or a selector. Furthermore, Plaintiff testified that her daily job duties involved lifting and carrying boxes and other objects heavier than her medically-imposed restrictions allowed.    Additionally, Defendant's job descriptions state that the stocker and selector positions involve physical activities beyond that which Plaintiff's medical restrictions allowed.

Plaintiff argues that the lifting requirements described in Defendant's job descriptions are not necessarily "essential."  While that may be true in a hypothetical sense, Plaintiff must present evidence sufficient to create a genuine dispute of material fact in order to avoid summary

judgment.  Plaintiff's conjectures are not sufficient to rebut the evidence in the record regarding the stocker and selector job requirements and Plaintiff's own admission that she could not perform her work duties without accommodation.  Moreover, Plaintiff admitted that she could not perform her job duties as a stocker or a selector.

Plaintiff further argues that she could perform her job duties with reasonable accommodations.  Plaintiff contends that Defendant could have given her assignments involving less strenuous work, such as working in aisles with lighter products or given assignments placing labels on boxes.  Plaintiff also contends that an office position was open sometime around the time she was terminated and Defendant could have reassigned her into that position.

However, the record shows that Plaintiff could not perform <u>any</u> work.  Plaintiff testified during her deposition that she felt that she could not work anywhere since October 2010.  In May 2011, Plaintiff's doctor restricted Plaintiff from lifting anything over ten pounds.  Plaintiff also admitted, in a request for admission, that she felt that she could not perform work in any capacity since May 1, 2013.  Plaintiff has not applied for any other work under the belief that her limitations would preclude any employers from hiring her.  Moreover, Plaintiff applied for state disability benefits as well as disability benefits under the Social Security Act.[5]  In support of her application for disability benefits, Plaintiff's physician opined that Plaintiff had not been capable of working her regular work since November 2007.

Plaintiff contends that Defendant temporarily accommodated her by giving her assignments to place labels for ads.  However, Plaintiff also admitted that this task was only performed on Thursdays and Fridays, when new ads came out, and there was no full-time position dedicated to the task.  "[A]n employer is not required to create light-duty positions for purposes of accommodating a disabled employee unable to perform the essential functions of the position for which he or she was hired [and] an employer who has created such a temporary assignment has no duty to transform that accommodation into a permanent position..."  <u>Raine v.</u>

---

[5] Claims for disability benefits do not automatically preclude claims for disability discrimination, but a plaintiff's prior representations on benefits applications are relevant in the discrimination context and "may be so strong and definitive that they will defeat the plaintiff's prima facie case on traditional summary judgment grounds."  <u>Johnson v. State, Oregon Dept. of Human Resources, Rehabilitation Div.</u>, 141 F.3d 1361, 1368-69 (9th Cir. 1998).

City of Burbank, 135 Cal. App. 4th 1215, 1224 (2006).  Accordingly, Defendant has no duty under FEHA to create a new position for Plaintiff dedicated to placing labels for new ads.

Plaintiff has not carried her burden of proving she was able to do her job, with or without reasonable accommodation.  Plaintiff has not presented sufficient evidence to overcome her own admissions and her prior representations in her disability benefit applications to create a genuine issue of material fact with respect to her ability to work with reasonable accommodation.  The evidence suggests that Plaintiff cannot perform any work.  Plaintiff and her physician stated that Plaintiff cannot work in any capacity and nothing in the record rebuts this conclusion and creates a triable issue of material fact with respect to whether Plaintiff can work with accommodations or in a different position.

Plaintiff contends that Belva Biagas, CVS's human resources manager, determined that Plaintiff could be accommodated to perform the essential functions of her stocker position.  (Pl's Corrected Separate Statement of Disputed Facts Related to Def. CVS Pharmacy, Inc.'s Mot. for Summ. J. or, in the Alternative, Part. Summ. J. No. 88, ECF No. 35.1.)  However, the evidence cited does not support this fact.  Plaintiff cites Plaintiff's declaration, which states that Biagas did not find any accommodations for Plaintiff.  (Decl. of Leticia Ceja-Coronoa in Opp'n to Def.'s Mot. for Summ. J. or, in the Alternative, Part. Summ. J. ¶ 22, ECF No. 33.3.)  Plaintiff also cites Biagas' deposition testimony, wherein Biagas testifies that no accommodations could be found. (Pl. Leticia Ceja-Corona's Not. of Filing Exceprts of Cited Dep. Transcripts in Opp'n to Def.'s Mot. for Summ. J. or, in the Alternative, Part. Summ. J., Ex. 2 57:4-59:25; 102:21-103:2; 103:24-124:2.; 93:12 -124:2, ECF No. 33.16.)  Biagas' testimony only states that Plaintiff could perform some job duties, but also identifies other specific job duties that Plaintiff could not perform, such as cutting certain boxes, removing empty pallets, pushing merchandise carts and moving products over 25 pounds.

Based upon the foregoing, the Court finds that Plaintiff has not demonstrated that a genuine issue of material fact exists with respect to whether Plaintiff could perform her job duties with or without reasonable accommodation.  Accordingly, Plaintiff cannot make a prima facie claim for disability discrimination and Defendant is entitled to summary judgment with

1  respect to this claim.

2  **B.      Plaintiff's Claim for Failure to Engage in the Interactive Process**

3  Defendant argues that Plaintiff's claim for failure to engage in the interactive process

4  must fail because Plaintiff cannot show that reasonable accommodation was possible and

5  because any breakdown in the interactive process was caused by Plaintiff.

6  "The interactive process required by the FEHA is an informal process with the employee

7  or the employee's representative, to attempt to identify a reasonable accommodation that will

8  enable the employee to perform the job effectively." Scotch v. Art Institute of California-Orange

9  County, Inc., 173 Cal. App. 4th 986, 1013 (2009) (quoting Wilson v. County of Orange, 169 Cal.

10  App. 4th 1185, 1195 (2009).  "The interactive process imposes burdens on both the employer

11  and employee." Id.  The employee has the burden of initiating the process, the employer has a

12  continuous obligation to engage in the process in good faith, and both parties have the obligation

13  to keep communications open and neither has a right to obstruct the process. Id. at 1013-14.  An

14  employer may prevail on summary judgment on a claim of failure to reasonably accommodate if

15  it establishes through undisputed facts that there simply was no vacant position within the

16  employer's organization for which the disabled employee was qualified and which the disabled

17  employee was capable of performing with or without accommodation. Nadaf-Rahrov v. Neiman

18  Marcus Group, Inc., 166 Cal. App. 4th 952, 979-81 (2008).

19  As discussed above, there is no genuine issue of material fact with respect to whether a

20  reasonable accommodation existed. See discussion, supra, Part III.A.2.  Accordingly, Defendant

21  is entitled to summary judgment with respect to Plaintiff's claim for failure to engage in the

22  interactive process because there is no genuine issue of material fact with respect to whether a

23  reasonable accommodation exists.

24  **C.      Plaintiff's Claim for Failure to Prevent Discrimination**

25  Defendant argues that Plaintiff's claim for failure to prevent discrimination must fail if

26  the underlying claim for disability discrimination fails.  Since Defendant is entitled to summary

27  judgment with respect to Plaintiff's discrimination claim, Defendant is also entitled to summary

28  judgment with respect to Plaintiff's failure to prevent discrimination claim. See Trujillo v. North

1 | County Transit Dist., 63 Cal. App. 4th 280, 286-289 (1998).

2 |       **D.**     **Plaintiff's Claim for Retaliation**

3 |      Defendant argues that Plaintiff's claim for retaliation fails because Plaintiff cannot

4 | demonstrate that a causal link exists between any protected activity of Plaintiff and any adverse

5 | employment action. Defendant contends that there is no evidence of any causal link between

6 | Plaintiff's termination and her medical leaves on one hand, and Plaintiff's requests for

7 | accommodation on the other. In support of their position, Defendant notes that during her

8 | deposition, Plaintiff testified that she never heard anyone at CVS say anything negative about her

9 | disability or injury. (Landy Decl., Ex. A 175:1-25, ECF No. 27.5.). Plaintiff also testified that

10 | she does not believe her leave of absence was related to her termination. (Landy Decl., Ex. A

11 | 176:23-177:5, ECF No. 27.5.) Defendant also notes that Plaintiff can articulate legitimate, non-

12 | retaliatory reasons for Plaintiff's termination--Plaintiff could not perform her job duties and

13 | could not return to work after her medical leave. See discussion, supra, Part III.A.2.

14 |      "To establish a prima facie case of retaliation under the FEHA, a plaintiff must show '(1)

15 | he or she engaged in a "protected activity," (2) the employer subjected the employee to an

16 | adverse employment action, and (3) a causal link existed between the protected activity and the

17 | employer's action.'" Scotch v. Art Institute of California-Orange County, Inc., 173 Cal. App.

18 | 4th 986, 1020 (2009) (quoting Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1042 (2005)).

19 | "Once an employee establishes a prima facie case, the employer is required to offer a legitimate,

20 | nonretaliatory reason for the adverse employment action." Akers v. County of San Diego, 95

21 | Cal. App. 4th 1441, 1453 (2002) (citing Morgan v. Regents of University of California, 88 Cal.

22 | App. 4th 52, 68 (2000)). If the employer produces a legitimate reason for the adverse

23 | employment action, the presumption of retaliation "drops out of the picture," and the burden

24 | shifts back to the employee to prove intentional retaliation. Id. (citing Morgan, 88 Cal. App. 4th

25 | at 68).

26 |      For the reasons discussed previously, the undisputed facts support Defendant's

27 | contention that Plaintiff was placed on medical leave and terminated for a legitimate, non-

28 | retaliatory reason--namely that Plaintiff was unable to perform her regular job duties. The

1  burden shifts back to Plaintiff to prove intentional retaliation. However, the record is devoid of

2  evidence of intentional retaliation. The only evidence cited by Plaintiff is the fact that Plaintiff

3  was terminated after taking a protected leave of absence. A reasonable trier of fact could not

4  draw a reasonable inference of retaliatory motive from the record before the Court. See Scotch,

5  173 Cal. App. 4th at 1020-21 (temporal proximity between protected action and adverse

6  employment action insufficient to withstand summary judgment). Accordingly, Defendant is

7  entitled to summary judgment with respect to Plaintiff's retaliation claim.

8      **E.     Plaintiff's Wrongful Termination and Unfair Competition Claims**

9      Defendant argues that Plaintiff's remaining claims for wrongful termination and unfair

10  competition must fail because they are derivative of Plaintiff's claim for disability

11  discrimination.

12      Under California law, if an employer did not violate FEHA, the employee's claim for

13  wrongful termination in violation of public policy fails. Esberg v. Union Oil Co., 28 Cal. 4th

14  262, 272-73 (2002). Since Defendant is entitled to summary judgment with respect to Plaintiff's

15  FEHA claims, Defendant is also entitled to summary judgment with respect to Plaintiff's

16  wrongful termination claim.

17      Similarly, Plaintiff's unfair competition claim was premised on the contention that

18  Defendant's conduct was unlawful under FEHA. (See Compl. ¶ 75.) Plaintiff did not allege that

19  Defendant violated California's unfair competition laws in any manner distinct from the alleged

20  violation of FEHA and the other causes of actions raised in the complaint. Therefore, since there

21  Defendant is entitled to summary judgment with respect to the claims which also serve as the

22  foundation of Plaintiff's unfair competition claim, Defendant is entitled to summary judgment

23  with respect to Plaintiff's unfair competition claim. See Asencio v. Miller Brewing Co., 283

24  Fed. Appx. 559, 561-62 (9th Cir. 2008).

25      **F.     Plaintiff's Prior Bankruptcy Proceedings**

26      Alternatively, Defendant argues that Plaintiff's present claims are barred because

27  Plaintiff failed to disclose the existence of her claims during her bankruptcy proceedings.

28  Failure to disclose claims in bankruptcy proceedings implicates the doctrine of judicial estoppel:

> Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position. Rissetto v. Plumbers & Steamfitters Local 343, 94 F.3d 597, 600-601 (9th Cir. 1996); Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990). This court invokes judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of "general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings," and to "protect against a litigant playing fast and loose with the courts." Russell, 893 F.2d at 1037.

Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001)

The Court may look to three factors in determining whether to apply the doctrine of judicial estoppel: first, the party's later position must be "clearly inconsistent" with its earlier position. Hamilton, 270 F.3d at 782. Second the court should inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Id. Third, the court considers whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. Id. at 783.

"In the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements." Hamilton, 270 F.3d at 783. "Judicial estoppel will be imposed when the debtor has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy, but fails to amend his schedules or disclosure statements to identify the cause of action as a contingent asset." Id. at 784. Thus, judicial estoppel will apply in the bankruptcy context even if the debtor does not file the lawsuit until after filing for bankruptcy. Id. On the other hand, "generally, a debtor has no duty to schedule a cause of action that did not accrue prior to bankruptcy." Cusano v. Klein, 264 F.3d 936, 947 (9th Cir. 2001) (citations omitted). However, "accrual" in this context is distinguishable from principles of accrual in other contexts, such as in the statute of limitations context. See id. To determine when a cause of action accrues, the court looks to state law. Id. Under California law, a cause of action generally accrues "when the cause of action is complete with all of its elements." Norgart v. Upjohn Co.,

14

1  21 Cal. 4th 383, 397 (1999); see also In re Brown, 363 B.R. 591, 605 (D. Montana 2007) (cause

2  of action accrues when the claim "could have been brought").

3       In this case, Plaintiff filed for Chapter 7 bankruptcy on April 9, 2010.  Since Plaintiff did

4  not report any causes of action in her bankruptcy schedules, any cause of action which accrued

5  prior to April 9, 2010 would potentially be barred by the doctrine of judicial estoppel.

6       Defendant contends that July 23, 2010, the date Plaintiff's bankruptcy closed, should be

7  the relevant date for determining which claims should be barred.  However, in Chapter 7 actions,

8  the bankruptcy estate only includes causes of action which existed as of the date the petition was

9  filed--causes of action which accrued post-petition are not part of a Chapter 7 estate.  11 U.S.C. §

10  541(a)(1) ("Such estate is comprised of all of the following property ... all legal or equitable

11  interests of the debtor in property *as of the commencement of the case.*") (italics added); see also

12  In re Brown, 363 B.R. 591, 604 (D. Mont. 2007). ("If the cause of action accrued prior to a

13  debtor's petition date, it is an asset that must be scheduled.").  Defendant does not demonstrate

14  how judicial estoppel would apply to claims which accrued after the petition date in light of the

15  fact that there is no apparent unfair advantage gained by Plaintiff for failing to report causes of

16  action which accrued post-petition.  Such claims would not be part of Plaintiff's estate and the

17  failure to report them would have no bearing on the bankruptcy proceeding.

18       Certain claims raised in Plaintiff's complaint did not accrue prior to April 9, 2010.

19  Plaintiff did not receive the initial termination letter until February 3, 2011.  Accordingly, claims

20  based upon Plaintiff's termination did not accrue until after the filing of Plaintiff's bankruptcy

21  petition and therefore would not be barred by the doctrine of judicial estoppel.

22       However, Plaintiff's complaint also alleges that Defendant ignored Plaintiff's requests for

23  accommodations for her disability between 2008 and October 2010.  (Compl. ¶ 10.)  Under the

24  doctrine of judicial estoppel, Plaintiff would be barred from seeking recovery for claims based

25  upon the failure to accommodate which accrued prior to April 9, 2010, but would be allowed to

26  litigate claims which accrued after April 9, 2010.  See Cusano, 264 F.3d at 947-48 (debtor

27  permitted to pursue claims on an open book account for balances past due post-bankruptcy

28  petition, but not pre-petition).

1        Plaintiff argues that judicial estoppel is an equitable doctrine that should not be applied in

2   circumstances where her failure to disclose her claims during bankruptcy was not deliberate.

3   Plaintiff cites In re Cheng, 308 B.R. 448, 460-61 (9th Cir. BAP 2004) for the proposition that the

4   "correct solution" is to reopen bankruptcy when a debtor "forgets" to schedule a cause of action.

5   However, In re An-Tze Cheng has no applicability because it concerns the appropriate

6   application of judicial estoppel in the *bankruptcy* court context.   When a debtor is before the

7   *bankruptcy* court and forgets to schedule a cause of action, a defendant in the *bankruptcy* action

8   may ask that the *bankruptcy* proceeding be terminated on the grounds that the debtor is judicially

9   estopped from proceeding.   Id. at 460.   However, the Ninth Circuit Bankruptcy Appellate Panel

10  stated that, instead, the "correct solution is often to reopen the bankruptcy case and order the

11  appointment of a trustee who, as owner of the cause of action, can determine whether to deal

12  with the cause of action for the benefit of the estate."   Id.   This "solution" has no applicability in

13  the civil context in a case before this Court, since the Court is unaware of any authority to reopen

14  Plaintiff's bankruptcy case or order the appointment of a trustee to "deal with the cause of

15  action."   Moreover, the "solution" in the bankruptcy context is premised on the fact that, in the

16  bankruptcy context, "the victims are the debtor's creditors" and "[t]he equitable balance compels

17  consideration of whether the economic consequences of a judicial estoppel are borne by third

18  parties."   Id.   Allowing a trustee to deal with the cause of action would redress the debtor's

19  wrong with respect to the debtor's creditors, who were damaged by the debtor's failure to fully

20  disclose his or her assets.   There are no third party economic consequences in this case, because

21  allowing Plaintiff to litigate her claims will provide no benefit to Plaintiff's creditors.

22        Plaintiff also cites Donato v. Metropolitan Life Ins. Co., 230 B.R. 418 (N.D. Cal. 1999)

23  as support for the proposition that judicial estoppel should not apply when the failure to disclose

24  the cause of action in bankruptcy was inadvertent.   Donato is distinguishable from this case.   In

25  Donato, the court made a factual finding that the bankruptcy court did not rely on the plaintiff's

26  prior inconsistent statement.   Id. at 423.   The court reviewed Donato's bankruptcy proceeding

27  and noted that Donato's Chapter 13 plan repaid all of Donato's creditors 100 per cent on their

28  claims.   Id.   Thus, none of the creditors in Donato were prejudiced by Donato's failure to

1  disclose and judicial estoppel did not apply.

2      Notably, the Ninth Circuit did not analyze whether the debtor's failure to schedule their

3  causes of action in <u>Hamilton</u> nor <u>Cusano</u> was deliberate or inadvertent.  Following <u>Hamilton</u> and

4  <u>Cusano</u>, this Court finds that judicial estoppel is appropriate in the case, but only with respect to

5  Plaintiff's claims that accrued prior to April 9, 2010.  Plaintiff is barred from bringing any claim

6  in this action which Plaintiff could have asserted on April 9, 2010.  The Court grants summary

7  judgment in favor of Defendant on those claims.

8                              **IV.**

9                   **PLAINTIFF'S EVIDENTIARY OBJECTIONS**

10     Plaintiff filed objections to Defendant's evidence submitted in support of its motion for

11 summary judgment.  Plaintiff raises fifteen objections to materials submitted by Defendant.

12     The Court need not address Plaintiff's Objection Number 1, as it concerns matters not

13 relevant to the Court's analysis (the date when CVS processed Plaintiff's termination).

14     The Court overrules Plaintiff's Objection Numbers 2-14.  These objections concern Belva

15 Biagas' deposition testimony regarding the job requirements and duties for the CVS stocker and

16 selector positions.  Biagas stated that she is currently the Employee Relations Manager and

17 Human Resources Manager for CVS' distribution center in Patterson, California.  Biagas stated

18 that she is responsible for overseeing the human resources function, has access to employee

19 information, worked with management regarding employees with disabilities and requests for

20 accommodations, and her statements are based on her personal knowledge and her review of

21 CVS' corporate records maintained in the regular course of business.  The Court finds that

22 Biagas has personal knowledge of the various job duties and requirements for the stocker and

23 selector positions at the CVS distribution center in Patterson, California.  Her testimony has

24 foundation and is not irrelevant.  The Court disregards Plaintiff's objections based upon the fact

25 that her declaration contradicts sworn deposition testimony, as Plaintiff makes no effort

26 whatsoever to identify the sworn deposition testimony which contradicts Biagas' declaration.

27 The Court finds that the statements are not unduly prejudicial.  Plaintiff's hearsay objections

28

1   have no merit, as Biagas' statements are her own, not based upon statements of other witnesses.[6]

2   Finally, the CVS job descriptions for stockers and selectors do not lack authentication.

3          The Court overrules Plaintiff's Objection Number 15, which concerns the statement of

4   Defendant's attorney, Ricardo Ramirez, regarding Plaintiff's admission, during her deposition,

5   that she applied for Social Security benefits.  This statement is not hearsay, as it is an admission

6   by a party-opponent.  Fed. R. Evid. 801(d)(2).  This statement does not lack foundation or

7   personal knowledge, does not contradict deposition testimony, is not unduly prejudicial and is

8   not irrelevant.

9                                                        **V.**

10                                **CONCLUSION AND RECOMMENDATION**

11         Based upon the foregoing, the Court finds that Defendant is entitled to summary

12  judgment.  The Court finds that there is no genuine issue of material fact with respect to whether

13  Plaintiff could perform her job duties, with or without reasonable accommodation.  The Court

14  further finds that there is no genuine issue of material fact with respect to whether Defendant

15  intentionally retaliated against Plaintiff for her protected activity.  Moreover, the Court finds that

16  the doctrine of judicial estoppel bars Plaintiff's claims which accrued prior to April 9, 2010 due

17  to Plaintiff's failure to disclose the existence of those claims during her bankruptcy proceedings.

18         Based upon the foregoing, it is HEREBY RECOMMENDED that Defendant's motion for

19  summary judgment be GRANTED;

20         These Findings and Recommendations are submitted to the United States District Judge

21  assigned to this case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the

22  Local Rules of Practice for the United States District Court, Eastern District of California.

23  Within fourteen (14) days after being served with a copy, any party may file written objections

24  with the court and serve a copy on all parties.  Such a document should be captioned "Objections

25  to Magistrate Judge's Findings and Recommendation."   The Court will then review the

26  _____

27  [6] For example, Plaintiff raised a hearsay objection to Biagas' statement that "Stockers are assigned to specific aisles
of the warehouse and handle merchandise from only their assigned aisles." (Pl. Leticia Ceja-Corona's Obj. to Evid.
in Opp'n to Def.'s Mot. for Summ J. or, in the Alternative, Partial Summ. J. 3:25-28, ECF No. 33.4.)  There is no

28  reference to any statement made by anyone other than Biagas in that statement.

Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

   Dated:   __**April 28, 2014**__

                               UNITED STATES MAGISTRATE JUDGE