IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LETICIA CEJA-CORONA, | 1:12-cv-1703-AWI-SAB |
| Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTION TO REVIEW CLERK'S TAXATION OF COSTS** |
| v. | |
| CVS PHARMACY, INC., | |
| Defendant. | |

On July 25, 2014, this Court adopted the Magistrate Judge's findings and recommendations, granting Defendant's motion for summary judgment. Doc. 44. Judgment in Defendant's favor followed three days later. Doc. 45. On July 31, 2014, Defendant submitted a bill of costs seeking $7,414.55 in costs. Doc. 46. The Clerk of the Court reduced the costs taxation to $6,001.25. Doc. 48. Plaintiff now moves the Court to reject the Clerk's Taxation of Costs. Doc. 49. For the following reasons, Plaintiff's motion will be denied.

Rule 54(d)(1) of the Federal Rules of Civil Procedure provides that "costs – other than attorney's fees – should be allowed to the prevailing party." The Ninth Circuit has held that "the rule creates a presumption in favor of awarding costs to a prevailing party, but vests in the district court discretion to refuse to award costs." *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1247 (9th Cir. 2014) (quoting *Ass'n of Mexican –American Educ. v. State of Cal.*, 231

1

F.3d 572, 591 (9th Cir. 2000) (en banc)). If a district court exercises its discretion to deny costs it must specify its reasons. *Ass'n of Mexican-American Educ.* 231 F.3d at 591-592.

The Ninth Circuit has provided several sets of "[a]ppropriate reasons for denying costs." *Escriba*, 743 F.3d at 1247. Most recently it considered: "(1) the substantial public importance of the case, (2) the closeness and difficulty of the issues in the case, (3) the chilling effect on future similar actions, (4) the plaintiff's limited financial resources, and (5) the economic disparity between the parties." *Escriba*, 743 F.3d at 1247-1248 (citing *Ass'n of Mexican –American Educ.*, 231 F.3d at 592-593). The Ninth Circuit noted that the above-articulated list is not "an exhaustive list of 'good reasons' for declining to award costs," but rather a starting point for analysis. *Escriba*, 743 F.3d at 1248 (citing *Ass'n of Mexican-American Educ.*, 231 F.3d at 593). Plaintiff and Defendant both draw the Court's attention to *Quan v. Computer Sciences Corp.*, 623 F.3d 870, 888-889 (9th Cir. 2010), where the court articulated a framework for denial of costs that omitted the fifth consideration in *Escriba* – the economic disparity between the parties – but included two other considerations: "any misconduct by the prevailing party" and "whether the losing party litigated in good faith."[1]

1. Plaintiff's Financial Resources

Plaintiff alleges that she has limited financial resources. In support of that position, Plaintiff has submitted evidence to show that she has been unemployed since Defendant terminated her in 2011. (Declaration of Leticia Ceja-Corona "Ceja-Corona Dec." at ¶¶ 10-11.) Plaintiff's only income comes in the form of social security disability, food stamps, and child support payments. (*Id.* at ¶ 12.) The total amount of monthly income for Plaintiff is $1,989.80 which results in an annual income of $23,877.60. (*Id.* at ¶ 12.)

In considering limited financial resources the court need not determine that the non-prevailing party is indigent; rather, the proper inquiry is whether an award of costs might make her so. *Stanley v. University of Southern California*, 178 F.3d 1069, 1079 (9th Cir. 1999).

---

[1] Based on the *Escriba* court's discussion of the losing party's limited financial resources, it is reasonable to infer that – regardless of whether it is an independent consideration – "great economic disparity" between the parties is considered as a part of a losing party's limited financial resources. *Escriba*, 743 F.3d at 1249.

Defendant contends that Plaintiff's evidence fails to show that an imposition of costs in the amount of $6001.25 would render Plaintiff indigent. Defendant points out that Plaintiff has not submitted any evidence of her costs of living to allow the court to evaluate whether the cost taxation would push Plaintiff into indigency. Doc. 52 at 7. Plaintiff counters by alleging that *Ass'n of Mexican-American Educ.*, 231 F.3d 572, stands for the proposition that "it is not necessary that Plaintiff provide documentary evidence of her financial status." Doc. 55 at 8 (citing *Assn' of Mexican-American Educ.*, 231 F.3d 572). In *Ass'n of Mexican American Education,* the Court noted without regard to her household costs, "that [the non-prevailing party's] resources [were] limited." *Ass'n of Mexican-American Educ.*, 231 F.3d 593. Although, a plaintiff must overcome the "presumption in favor of awarding costs" (*Escriba*, 743 F.3d at 1247) and a "plaintiff's failure to provide any documentary evidence of financial status [may leave] the Court without sufficient proof of her alleged indigency," (*Kidd v. Pacific Bell Telephone Co.*, 2013 WL 2146924 at *2 (N.D. Cal. 2013); *see Washburn v. Fagan*, 2008 WL 361048, at *2, n.4 (N.D. Cal. 2008) (citing *Terry v. Allstate Ins. Co.*, 2007 WL 3231716 at *5 (E.D. Cal. 2007) ("[T]he burden is on the losing party to substantiate a claim of indigency.")) Plaintiff has made a proffer that her total income amount – all obtained from government assistance and child support – is below the poverty line (*See* Doc. 49 at 5; Doc 49-2 (explaining that Plaintiff falls within the "extremely low income" level set by the United States Department of Housing and Urban Development ("HUD")).[2]

Defendant's requested "modest cost award" amounts to roughly one quarter of Plaintiff's already-meager annual income. Doc. 52 at 7. Also relevant for determining Plaintiff's financial resources, Plaintiff was recently awarded a class representative award of up to $10,000.00 for her services and participation in a wage and hour class action against the same defendant. *See Leticia*

---

[2] Defendant Objects to the Court's consideration of HUD figures for low income in the Court's determination of Plaintiff's limited resources. Doc. 52 at 6, n. 3. This Court is not bound by any "hard and fast rules for assessing a losing party's indigency or inability to pay; district courts should use their common sense in making this determination." *Van Horn v. Dhillion*, 2011 WL 66244 at *3 (E.D. Cal 2011) (quoting *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 463-464 (3rd. Cir. 2000). Further, as Plaintiff correctly noted in her motion to review clerk's taxation of costs, at least one court in this District has considered HUD data in determining whether the losing party has limited financial resources. Such consideration is certainly reasonable here.

*Ceja-Corona v. CVS Pharmacy, Inc.*, 1:12-cv-01868-AWI-SAB, Doc. 71, 73 (E.D. Cal. 2015). The Court has not been provided an outline of Plaintiff's expenses, but based on the amount and source of her income, the fact that she is a single mother, and sole wage earner in her household, the court can conclude has limited financial resources. However, there is no risk that imposing this cost award might push Plaintiff into indigency because the fee award described, when final, will be greater than the costs taxed in this case. This factor is neutral in the cost taxation analysis.

2. Significant Economic Disparity

Even assuming that the cost award would not result in Plaintiff's indigency, at least one district court has found that the even though the plaintiff had not "presented evidence sufficient to show actual indigence," the court could consider the plaintiff's "very limited means" for purposes of determining the economic disparity between the parties. *Washburn v. Fagan*, 2008 WL 361048, at *2; *see Romero v. Frederick*, 2008 WL 142359, *2 (N.D. Cal. 2008). Here, Plaintiff is unemployed and reliant on government benefits whereas Defendant is "the largest pharmacy health care provider in the United States," (Doc 49-2 at 8) generating nearly 140 billion dollars in net revenues in 2014.[3] There is a significant disparity between the resources of the parties in this case. This factor weighs against taxing costs.

3. Issue of Substantial Public Importance and Closeness and Difficulty of the Case

Raising issues of substantial public importance weighs imposing costs upon a losing plaintiff. The Ninth Circuit has explained that, even when unsuccessful, when civil rights plaintiffs "raise important issues … [with] answers [that are] far from obvious" they clarify the law for future litigants. *Stanley*, 178 F.3d at 1080. When the Ninth Circuit has found that a case is of public importance it has noted the scope of the potential impact: "the action affects tens of thousands of Californians and the state's public school system as a whole." *Ass'n of Mexican-American Educ.*, 231 F.3d at 593. The Ninth Circuit has rejected the argument an issue is necessarily not one of substantial public importance simply because the plaintiff seeks only damages for his or her own injuries. *Escriba*, 743 F.3d at 1248. Rather, when the issue litigated

---

[3] CVS Health Financial Highlights, 2014, available online at http://investors.cvshealth.com/financial-information/financial-highlights.aspx (last accessed March 3, 2015).

by a lone employee could "potentially [have] a much broader application to the workplace" the court may properly conclude that the issue is one of substantial public importance. *Id.* at 1248; *but see Eaglesmith v. Ray*, 2013 WL 1281823, *5 (E.D. Cal. 2013) ("[E]ven though Plaintiffs' claims involved discrimination at Plumas County public schools, the relief they sought, if obtained, was limited to them with no greater implications.") The nature of a cause of action relating to an issue that generally benefits the public interest is - "in and of itself [-] insufficient for a court to refuse to award costs." *Friends of Tahoe Forest Access v. U.S. Department of Agriculture*, 2014 WL 1575622, *3 (E.D. Cal. 2014) (recognizing that environmental suits are important but that bringing an environmental suit does not necessarily render an issue of substantial public importance for purposes of avoiding a taxation of costs). Where a plaintiff's litigation clarifies the law or paves the way for future litigation, this factor weighs against imposing costs.

Plaintiff draws the Court's attention to the district court's reasoning in *Escriba* where the court found that a FMLA claim was of substantial public importance, in part, because it involved a low-wage earner in a single-parent household. *See* Doc. 49 at p. 7 (citing *Escriba v. Foster Poultry Farms*, 2012 WL 174847, *5 (E.D. Cal. 2012) *aff'd* 743 F.3d 1236 (9th Cir. 2014)). The court reasoned that "the FMLA's entitlement to unpaid leave [is] particularly important" because low-wage workers "have less leave available to them," and are likely to be more vulnerable to job loss as "the only wage earner in a single parent home." *Escriba*, 2012 WL 174847 at *5. Upon review, the Ninth Circuit found that the case was of public importance because it helped "establish the parameters of what constitutes sufficient employee notice," and because "the case potentially had a much broader application to the workplace." Escriba, 743 F.3d at 1248. Notably, the Ninth Circuit did not consider the plaintiff's status as a low-wage earner in coming to that conclusion. That is not to say that Plaintiff's status as a low-income single parent is not considered in the cost taxation inquiry; it is. That status is and has been appropriately considered in looking at Plaintiff's limited financial resources and will be considered with determining the chilling effect of taxing costs.

Eradication of unlawful discrimination in any form is clearly an objective of substantial public importance. *See Ass'n of Mexican-American Educ.*, 231 F.3d at 592.

However, no issue of public importance is served when a Plaintiff who – by her own terms – is unable to work in any capacity files suit against a company that appears to have attempted to reasonably accommodate to her disability for such time as that accommodation allowed her to perform her job. *See* Doc. 38 at pp. 7-9. Plaintiff did not litigate in a developing area or clarify existing law; she litigated despite the fact that she could not prove an essential element of a FEHA disability discrimination claim. Along those lines, it does not appear that this case was close or difficult, nor did it present any novel arguments or issues of law. *See Bruce v. Teleflora, LLC*, 2014 WL 2710974, *3 (C.D. Cal. 2014) (grouping the considerations of importance and complexity and finding neither in a run-of-the-mill breach of contract claim); *Steffens v. Regus Group, PLC*, 2012 WL 628235 (S.D. Cal. 2012) (finding that a plaintiff's discrimination case was of no public significance where he failed to "test the boundaries of the law," but rather presented "straightforward claims under rather settled law"). Plaintiff presented a relatively simple claim of disability discrimination but failed to present evidence to show that she could perform her job duties (or any work at all), with or without reasonable accommodation. *See* Doc. 38 at pp. 10, 18.[4]

Plaintiff's case did not raise an issue of public importance and it did not present any close or difficult, or novel issues of law or fact. Both of these considerations weigh in favor of taxing costs.

4. Chilling Effect on Future Actions

The courts in *Escriba* and *Stanley* noted that imposing high costs on losing civil rights plaintiffs of modest means may chill civil rights litigation. *Escriba*, 743 F.3d at 1248; *Stanley*, 178 F.3d at 1079-1080. When district courts have dealt with this factor it is generally against the backdrop of the plaintiff's income compared to the defendant's resources, importance of the

---

[4] Plaintiff's inability to perform any work should have been evident to counsel based on Plaintiff's statements that she could not work and her applications for social security disability benefits which indicated that she was unable to work. *See* Doc. 38 at 9.

issues raised and their closeness; i.e., all of the considerations already discussed. *See Mansourian v. Board of Regents of University of California at Davis*, 586 F.Supp.2d 1168, 1171-1172 (E.D. Cal. 2008); *Romero v. Frederick*, 2008 WL 142359, *1 (N.D. Cal. 2008).

When district courts have found that "high costs" could chill litigation the determination of whether a cost was high was viewed relative to the plaintiff's financial ability. *Compare Kidd v. Pacific Bell Telephone Co.*, 2013 WL 2146924, *2 (S.D. Cal. 2013) (finding that a $5,147.23 cost taxation was reasonable and would not chill future litigation in light of limited evidence of indigency and a $450,000 lump-sum payment plaintiff received some three years prior); *with Teater v. Pfizer, Inc.*, 2013 WL 5719222, *2-3 (D. Or. 2013) (finding that $7,206.04 in costs would be unduly burdensome in light of her inability to work due to disability and income of $1,233 per month in social security and food stamps); *Romero*, 2008 WL 142359 at *1 (finding that $7,213.17 in costs would be a harsh result that could chill future litigation when applies to a plaintiff who earned no more than $15 per hour). As noted, the Plaintiff's annual income – all from social security disability, food stamps, and child support – is just shy of $24,000. A cost taxation of $6,001.25 is roughly one fourth of her annual income.

That considered, Plaintiff was just awarded a class rep fee not to exceed $10,000 in a wage and hour class action before this Court on March 3, 2015. *See Ceja-Corona v. CVS Pharmacy, Inc.*, 1:12-cv-01868-SAB, Doc. 73. The Court considers that award in determining ability to pay as to this factor as the court did in *Kidd v. Pac Bell,* 2013 WL 2146924, *2. Imposing such a cost taxation upon Plaintiff would not chill other plaintiffs of modest means from rights litigation in this area because costs are only imposed after Plaintiff obtained the means to pay costs. This factor weighs against taxing costs.

5. Defendant's Misconduct, Plaintiff's Litigation in Good Faith and Stay of Taxation Pending Appeal

Plaintiff claims, for the first time in her reply, that Defendant engaged in misconduct at the discovery stage and that Plaintiff brought suit in good faith. Doc. 55 at 2-3. Plaintiff also request that, for the first time in her reply, this Court to stay costs pending completion of the

7

underlying litigation pursuant to Federal Rule of Civil Procedure 62. However, "It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers." *United States ex rel. Giles v. Sardie,* 191 F.Supp.2d 1117, 1127 (C.D.Cal.2000); *see also State of Nev. v. Watkins,* 914 F.2d 1545, 1560 (9th Cir. 1990) ("[Parties] cannot raise a new issue for the first time in their reply briefs.") (citations omitted)). In addition, Defendants did not have the opportunity to address whether a stay would be appropriate in this case. Accordingly, it is improper for the Court to consider any of those arguments.

6. Conclusion

      The Plaintiff has limited financial means but imposing this cost award would not push her into indigency. This factor is neutral in the cost taxation analysis. There is a substantial disparity in financial status between the parties. This factor weighs against taxing costs. This case did not present an issue of substantial public importance nor was it close or difficult. Further, imposing costs in this case would not risk chilling future litigation. Those elements weigh in favor of taxing costs. Despite Plaintiff's limited income and financial disparity between the parties, Plaintiff has not overcome the presumption in favor of imposing costs for the reasons described herein.

      Based on the foregoing IT IS HEREBY ORDERED that:

    1. Plaintiff's motion to review taxation of costs is denied.

IT IS SO ORDERED.

Dated: __March 19, 2015__                _____
                                               SENIOR DISTRICT JUDGE